ST. PAUL, J.
 

 On March 3, 1921, plaintiff agreed to drill, and afterwards did drill, a water well on Arthur Fontenot’s property “located about
 
 3Yi
 
 miles N. W. from Mamou, Parish of Evangeline,” bub not otherwise described. This act was recorded in the office of the clerk of court in the “Lien and Privilege” book. At that time Arthur Fontenot owned three tracts of land in Evangeline parish, to wit, one tract of 300 acres, another tract of one acre near by but detached therefrom, and another tract of 25 acres situated on Bayou Nez-Pique.
 

 After the death of Arthur Fontenot, plaintiff took a judgment in rem against the widow and heirs of Arthur Foxitenot for the unpaid price of the well with recognition of lien and privilege on the aforesaid one-acre tract. And then issued execution against said one-acre tract.
 

 Thereupon interveners opposed tne execution on the ground that they are the owners of said one-acre tract and that plaintiffs had no lien thereon.
 

 There was judgment in favor of the interveners, and plaintiff appeals.
 

 I.
 

 We do not think the sale to interveners was a mere simulation, as claimed by plaintiff. Interveners acquired the one-acre tract and the 25-acre tract from Stephen Fontenot, one of the sons of Arthur Fontenot, for $200 cash and the remission of a debt of $300. The reality of this sale is established beyond doubt. The trial judge says: “The consideration stated in the deed from Stephen Fontenot (to the interveners), however small, has been proven. The court well knows the interveners and third opponents herein, and knows them to be truthful. The court is satisfied that the consideration therein stated really passed.” And the testimony of the interveners as to the reality of the consideration has not been contradicted.
 

 And since their purchase from Stephen Fontenot, who was then the record owner of the land, was real, it is immaterial whether the sale by Arthur Fontenot to Stephen Fontenot was or was not a simulation. For parties purchasing on the faith of a recorded title have a right to rely thereon absolutely.
 

 But in point of fact the sale by Arthur Fontenot to his son Stephen Fontenot was not a simulation. Stephen Fontenot bought all his father’s property for $14,000, in payment whereof he assumed a mortgage indebtedness of $8,600, and issued his own mortgage notes for $5,400. Stephen Fontenot went into possession, paid off the $8,600, and finally sold the greater part of the land to the heirs of one Joseph Boutte, in extinguishment of the $5,400 of mortgage indebtedness which had passed into the hands of said Boutte. Of this the trial judge says: “Furthermore the deed from Arthur Fontenot to Stephen Fontenot was a real sale. Stephen Fontenot assumed the payment of a mortgage validly ex
 
 *617
 
 isting against the property and executed four notes for the residue. Arthur Fontenot delivered possession to Stephen Fontenot anc moved to Mamou. Stephen remained in possession of the property until he disposed of it as above stated. The court is therefore satisfied that the sale was bona fide and not simulated.”
 

 II.
 

 We will not enter upon any discussion as to whether or not it sufficed to record plaintiffs’ privilege in the “Lien' and Privilege Book” in the Clerk’s office, intended only to preserve pledges on. crops and not liens on real estate (Act No. 66 of 1874, p. 114). Nor whether the mere filing of a lien with the clerk will suffice without actual recordation. For in our opinion the description of the land is. too vague and indefinite to affect any particular piece of land.
 

 On this the trial judge says: The contract provides that the property to be affected is situated “3% miles from Momou.” .This description covers a large area. Arthur Fontenot had other property in the same neighborhood, and' one looking up the records would presume this well to be located on the large plantation of the said Fontenot in that neighborhood [and not on the one-acre lot]. The description given in' the contract was too vague, too general, and too indefinite to give the proper notice to third persons; the description was no description at all. The plaintiff had to rely on evidence aliunde [to establish that the well was put on the one-acre tract], and opponents objected to the introduction of such evidence, and properly so. Plaintiffs must stand on their written contract and solely so. The law requires that the property to be affected must be fully described in the act to affect third persons. As the interveners are the owners of the property seized and plaintiffs have no lien thereon, the judgment for the interveners was correct.
 

 Decree.
 

 The judgment appealed from is therefore affirmed.